Ernest J. CUMMINGS, Appellant,

v.

UNITED MOTOR EXCHANGE, INC., and Maryland Casualty Co., Insurance Carrier, Appellees.

No. 5-3007.

Supreme Court of Arkansas.

May 27, 1963.

J. Fred Jones, Little Rock, for appellant.

S. Hubert Mayes and S. Hubert Mayes, Jr., Little Rock, for appellees.

HOLT, Justice.

This is a workmen's compensation case in which the claimant-appellant, Ernest J. Cummings, contends that the payment of compensation benefits to him by the appellee, Maryland Casualty Company, was terminated prematurely.

On March 4, 1960, while employed by the appellee, United Motor Exchange, Inc., the appellant suffered a back injury when his foot slipped in some oil as he attempted to turn an automobile motor on the floor. As a result of this injury the appellant was paid workmen's compensation benefits for a period of twenty-five weeks or until September 1, 1960. Appellant contends that the payments for temporary total disability and reasonable medical expenses should have continued until March 6, 1961. The Referee disallowed his claim, the full Commission agreed with the Referee, and from the Circuit Court's judgment affirming the Commission comes this appeal.

The appellant urges for reversal the sole point that there is no substantial evidence he had sufficiently recovered from his unquestioned compensable injury to enable him to return to work on September 1, 1960.

The appellant had previously sustained a back injury in 1956 for which he was being paid a 10% permanent partial disability at the time of the present injury. Following the present injury and until he was discharged by Dr. Richardson it appears that he was hospitalized three separate times for observation and treatments consisting of physiotherapy and traction because of his persistent complaint of being in pain. He was examined by various doctors, including two neurosurgeons, who reviewed spinal myelograms made of him in August, 1957, and in June, 1960. They found no evidence of a herniated or ruptured disc. It is undisputed that his pain and discomfort persisted.

Dr. Richardson, in his final narrative report on July 19, 1960, wrote that upon seeing the appellant on July 12th he "was still

complaining of discomfort in his right hip with activity" and "I discussed the problem again with Mr. Cummings and advised him to attempt to return to normal activity in hopes that this discomfort would disappear. As stated before, I am unable to find any physical cause for this man's symptoms and I do not believe that he has any permanent disability." Later he submitted his Surgeon's Final Report and Bill on a printed form according to which he had last seen the appellant on August 17, 1960 in his office. He indicated on this form that he had discharged him as cured and ready to return to work as of September 1, 1960. He did not see the appellant on this date or thereafter. The appellant did not return to work. His undisputed testimony is that following his discharge the discomfort and pain continued and as a result of his "misery" he was so disabled he could not and did not work and was confined to his house until December 27, 1960. On that date the appellant was admitted to the Veterans Administration Hospital where another spinal myelogram was made which then did not disclose a protruding disc. However, because of appellant's persistent complaint upon physical therapy activity, a re-evaluation of this myelogram did show "L–5, S–1 right protruding disc, and on 2–3–61 patient was taken to the operating room where he had an extruding nucleus pulposus removed from the L–5, S–1 interspace on the right." This operation relieved appellant of his pain.

In August, 1961, one of the physicians who originally observed the appellant following his present injury reviewed the Veterans Administration Hospital records and confirmed that the VA spinal myelogram "did show a definite defect at the L–5, S–1 interspace on the right side." He reiterated that the spinal myelograms made in August, 1957 and June, 1960 did not show such abnormality and, further, any disability in June, 1960 would have to be based on claimant's subjective complaints. Dr. T. M. Fletcher, who performed the successful operation, reported:

"This man who has had symptoms of low back pain and sciatica for some time was operated on 2–3–61 with the removal of a herniated nucleus pulposus on the L–5, S–1 interspace on the right. This was a fairly large lesion and was undoubtedly the cause of his severe symptology. His post operative course was quite good and he was free of pain. * * * At the time of the most recent back strain which occurred in March, 1960, while working, he probably sustained the extrusion of the disc, and from that time up until the time of this hospitalization was disabled with severe back and leg pain."

We recognize the rule that a decision of the Workmen's Compensation Commission will be affirmed if there is any substantial evidence to support it. Aluminum Company of America v. Williams, 232 Ark. 216, 335 S.W.2d 315; McBride v. Ark-La Industries, 235 Ark. 675, 361 S.W.2d 532. However, whether the evidence is substantial in nature is also a question of law. Boyd Excelsior Fuel Co., v. McKown, 226 Ark. 174, 288 S.W.2d 614. In the case at bar we think there is no substantial evidence to support the Commission's finding that appellant's healing period ended September 1, 1960. It is true that various examining physicians were of the opinion that the spinal myelograms made in August, 1957 and June, 1960 did not disclose a herniated disc. Neither did the spinal myelogram made in January, 1961, at the Veterans Administration Hospital upon first interpretation. The crux of this case, however, is the question as to when appellant was physically able to return to work. The existence or non-existence of a herniated disc is not the primary issue—it is only a part of the total picture. Upon reviewing the evidence in this case we consider it to be overwhelming, and in fact the medical evidence so reflects, that the appellant was suffering pain and discomfort from an admitted compensable injury during all the time he was hospitalized or under observation. There is no evidence in this record to

refute his claim that he continued to suffer pain and discomfort after September 1, 1960. His claim of disability is abundantly corroborated by his admission into the Veterans Administration Hospital on December 27, 1960 where he was hospitalized and treated for several weeks before Dr. Fletcher operated and removed a large lesion on February 3, 1961. Following this the appellant described his condition as follows: "I feel like a new man altogether since the operation."

 It is the intent and purpose of our workmen's compensation laws that they should be liberally construed and, futher, that doubtful cases are to be resolved in favor of the claimant. Boyd Excelsior Fuel Co., v. McKown, supra; McBride v. Ark-La Industries, supra.

The judgment of the Circuit Court is, therefore, reversed and remanded with directions that the Circuit Court remand the case to the Workmen's Compensation Commission with directions to award the appellant temporary total disability from September 1, 1960 to March 6, 1961, together with reasonable medical expenses. Reversed.